UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| David Papa, *et al.*<br><br>*Plaintiffs*,<br><br>v.<br><br>Travco Insurance Company,<br><br>*Defendant.* | No. 24 CV 256<br><br>Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

David and Amy Papa ("Plaintiffs") sued their insurer, Travco Insurance Company ("Travelers"), for breach of contract and statutory fees after a coverage dispute over water damage at a property Plaintiffs owned. When Travelers refused to pay the full amount for a subsequent vandalism-based claim at the same property, Plaintiffs amended their complaint to include counts of common-law and statutory fraud, which Travelers now moves to dismiss. Because these counts are redundant of Plaintiffs' other claims and preempted under Illinois law, the motion is granted.

**I.  Background**

The Court takes Plaintiffs' well-pleaded factual allegations as true for purposes of ruling on the motion to dismiss. *See Smith v. First Hosp. Lab'ys, Inc.*, 77 F.4th 603, 607 (7th Cir. 2023). Plaintiffs own an apartment building located at 3556 West Congress Parkway in Chicago (the "Property"), which is insured by a Travelers "Landlord Dwelling Policy" (the "Policy"). The Policy provides for "functional

1

replacement cost" coverage for damages to the Property, including water damage.[1] [Dkt. 15 ¶¶ 4, 18-19.]

On December 25, 2022, Plaintiffs allege that the Property's heating system failed, which ultimately led to extensive water damage after six radiators exploded. According to Plaintiffs, Travelers sent an adjuster to the Property after the incident, who determined that Travelers would only cover the loss from one of the six radiators. [*Id.* ¶¶ 11-13, 28.] Because the parties disagreed on the amount of coverage, Plaintiffs retained an appraiser and demanded an appraisal, as contemplated in the Policy. [*Id.* ¶¶ 15, 26 (under the Policy, when parties "fail to agree on the amount of loss, either party may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other").]

Despite the demand, Plaintiffs allege Travelers refused to submit to an appraisal on whether "other parts of the covered property are damaged under this loss." [*Id.* ¶ 28.] Based on Travelers's refusal to pay the roughly $100,000 Plaintiffs' appraiser contends Travelers owes, Plaintiffs have been unable to repair the Property or host tenants. [*Id.* ¶¶ 29-30.] Accordingly, Plaintiffs sued Travelers in December 2023 alleging claims for breach of contract and violation of 215 ILCS 5/155, which

---

[1] The Policy states Travelers covers "loss to property … resulting from an accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, that causes damage … but only when necessary to repair the system or appliance from which this water or steam escaped." [*Id.* ¶ 24.]

permits the recovery of attorneys' and other fees in connection with "vexatious and unreasonable" conduct by an insurer in resolving a claim. [Dkt. 1.]

Plaintiffs allege a similar series of events occurred when Plaintiffs learned in early 2024 that squatters had moved into the Property and stripped the Property of various metallic items. Once again, Plaintiffs submitted a claim to Travelers, but Travelers agreed to pay for only a portion of the claim without an adequate explanation as to why. Plaintiffs responded by amending their complaint to add another breach of contract and Section 155 claim. [Dkt. 15 at 8-11.][2]

Plaintiffs' amended complaint also included counts for common-law fraud, and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). Plaintiffs allege Travelers's committed fraud by stating in the insurance policy that it would pay the "actual cash value of the damage", when it had no intention of doing so. [*Id.* ¶¶ 59-60.] Plaintiffs contend Travelers knew it would not honor its contractual promise at the time of execution because Travelers "has failed to offer an explanation for why it limited its estimates to the area of Plaintiffs' Property that it did" and because Travelers has refused to produce certain training materials and other documents, which Plaintiffs believe would show that Travelers systematically instructs its adjusters to pay less than what is owed under the policy.[3] [*Id.* ¶¶ 61-64.]

---

[2] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.
[3] Plaintiffs have moved to compel this information, which is also pending before the Court. [Dkt. 19.]

Travelers filed an answer to Plaintiffs' contractual and Section 155 claims, but moved to dismiss the fraud claims. Travelers's central argument is that Plaintiffs' fraud claims simply reargue that Travelers acted in bad faith while breaching the insurance contract, so they are preempted under Illinois law. [Dkt. 23.]

## II. Legal Standard

At the motion to dismiss stage, the Court takes well-pleaded factual allegations as true and draws reasonable inferences in favor of the plaintiff. *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023); *Reardon v. Danley*, 74 F.4th 825, 826-27 (7th Cir. 2023). "To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must allege facts which, when taken as true, plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (cleaned up). This occurs when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Garrard v. Rust-Oleum Corp.*, 575 F. Supp. 3d 995, 999 (N.D. Ill. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted)).

## III. Analysis

The resolution of Travelers's motion turns on whether Plaintiffs have alleged with particularity that Travelers acted fraudulently separate and apart from how it handled Plaintiffs' claims. Section 155 of the Illinois Insurance Code gives insureds extracontractual remedies, including attorneys' fees, when their insurer denies liability under a policy in a "vexatious and unreasonable" manner. 215 ILCS 5/155(1). Section 155's purpose is to penalize insurers that act in bad faith, and is meant to be

brought in conjunction with a breach of contract claim. *Cramer v. Insurance Exch. Agency*, 675 N.E.2d 897, 900-01 (Ill. 1996) ("a policyholder may bring a breach of contract action to recover the proceeds due under the policy. Pursuant to [Section 155], a plaintiff may also recover reasonable attorney fees and other costs, as well as an additional sum that constitutes a penalty.")

This dual remedy therefore preempts other tort claims where the plaintiff fundamentally alleges that the insurer acted in bad faith in denying a claim. *Id.* at 904-05; *Western Howard Corp. v. Indian Harbor Ins. Co.*, 2011 WL 2582353, at *4 (N.D. Ill. June 29, 2011) ("when a separate tort claim essentially is based on an insurer's failure to pay amounts purportedly due under an insurance contract, such claims are preempted by contractual remedies and those found in § 155); *Sklodowski v. Countrywide Home Loans, Inc.*, 832 N.E. 2d 189, 196 (Ill. App. Ct. 2005) (when "breach of contract and [ICFA] counts rely on the same facts," the consumer-fraud claim "is merely a breach of contract count clothed as a violation of the [ICFA]" and cannot proceed). But a plaintiff can bring other tort claims against an insurer if they "actually allege[] and prove[] the elements of a separate tort." *Cramer*, at 904. The question thus becomes whether Plaintiffs alleged anything more than a bad faith denial of their claims.

"To state a claim under the ICFA, a plaintiff must allege: (1) a deceptive act or unfair practice by the defendant; (2) defendant's intent that the plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce." *Counts v. Arkk Food Co.*, 2023 WL 7281851, at *2 (N.D. Ill. Nov. 3,

5

2023). The elements of common-law fraud in Illinois are as follows: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from this reliance." *Western Howard Corp.*, at *3.

Both claims are subject to Rule 9(b)'s heightened pleading standard.[4] *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736-37 (7th Cir. 2014) ("Since Camasta's claim was of fraud under the ICFA, the sufficiency of his complaint is analyzed under the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b)"); *Counts*, 2023 WL 7281851, at *2 ("when the gravamen of a plaintiff's complaint sounds in fraud, all ICFA claims are evaluated under the heightened pleading standard of Rule 9(b)"). Claims sounding in fraud must be pleaded with particularity under Rule 9(b), which requires alleging "the first paragraph of any newspaper story, i.e., the who, what, when, where, and how of the fraud." *Lanahan v. County of Cook*, 41 F.4th 854, 862 (7th Cir. 2022) (cleaned up).

Plaintiffs' allegations fall well short of meeting this standard. The misrepresentation Plaintiffs contend constitutes fraud is the Policy language itself; that Travelers would pay the "actual cash value of the damage." [Dkt. 15 ¶ 59.] Plaintiffs cannot point to who made the misrepresentation (beyond the signatories to

---

[4] Plaintiffs argue that Rule 9(b) does not apply to "unfair" practices under ICFA. [Dkt. 27 at 9.] Assuming *arguendo* Plaintiffs adequately alleged Travelers engaged in an unfair practice, the overall claim still sounds in fraud, so Rule 9(b) applies.

the Policy), or the context in which Travelers made the misrepresentation.[5] Moreover, Plaintiffs' explanation for how they know the statement is fraudulent is circular and speculative. Plaintiffs "believe" the contractual language was knowingly false based on how Travelers handled their claims—including the failure to engage in an appraisal despite contractual obligations to do so—and because Travelers has refused to produce certain training documents in this litigation, which Plaintiffs theorize will show Travelers's instructs its adjusters to ignore policy language. [*Id.* ¶¶ 61-63.] The Court's "look beyond the legal theory asserted to the conduct forming the basis for the claim" establishes Plaintiffs have not alleged fraud, but "that the insurer is lying after the fact to avoid paying his claim." *Cramer*, 675 N.E. 2d 897, at 904-05.

Plaintiffs' fraud theory is little different than the one alleged and rejected in *Western Howard*, a case on which Travelers rely and Plaintiffs ignore. *Western Howard Corp.*, 2011 WL 2582353. As here, *Western Howard* involved a dispute over the scope of coverage for water damage, and the insured brought claims for breach of contract, unreasonable and vexatious conduct under Section 155, ICFA, and common law fraud. The insured alleged the insurer committed fraud by, *inter alia*, failing to pay the claim, handling the claim in bad faith, and through the insurer's "representation in its policy that 'it would pay valid claims', when in fact it has not paid." *Id.* at *4. The district court dismissed the fraud claims based on these allegations, explaining as follows:

---

[5] Plaintiffs allege Travelers made the misrepresentation on March 1, 2021, "and possibly other dates", [Dkt. 15 ¶ 60], but the circumstances surrounding this allegation are unclear. Making all reasonable inferences in Plaintiffs' favor, the Court presumes this was the first time the parties executed an insurance contract with this language.

7

> This conduct, while potentially "unreasonably and vexatious," does not state a claim for an independent tort. At bottom, Plaintiff's fraud claims are based on Indian Harbor's failure to pay in accordance with its obligations under the policy and to fairly investigate the claim. Western attempts to shoehorn these failures into fraud by alleging that the failures were intentional and part of a "scheme to defraud," but these conclusory allegations simply are not enough.

*Id.* at *5; *see also Leona's Pizzeria, Inc. v. Northwestern Nat. Cas. Co.*, 203 F. Supp. 930, 933 (N.D. Ill. 2002) ("A claim that an insurer is lying after the fact to avoid paying a claim amounts to no more than [a] claim for denial of benefits and breach of contract, and is preempted by § 155"); *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E. 2d 801, 844 (Ill. 2005) ("A breach of contractual promise, without more, is not actionable under" ICFA). Plaintiffs' allegations and theory are no different. As in these cases, the purported fraud is simply Travelers's handling of Plaintiffs' claims, which Plaintiffs seek to "shoehorn" into alleging that Travelers never intended to comply with its contractual obligations. This is insufficient. *Compare Western Howard*, at *5; *with Leona's Pizzeria*, 203 F.Supp.2d 930, at 934 (allowing distinct fraud claim to proceed where plaintiff alleged "it was induced to enter the contract by Northwestern's fraudulent suppression of information about its poor financial condition.")

Plaintiffs' arguments do not alter this outcome. First, Plaintiffs contend their situation is different because Travelers's alleged malfeasance covers two claims. [Dkt. 27 at 2-3.] But the above precedent does not suggest the outcome was dependent on there being only a single claim. Rather, it is whether Plaintiffs have alleged a distinct cause of action beyond breaching the contract in bad faith. Plaintiffs' remedy is

8

precisely what they have already done: add new breach of contract and Section 155 claims to address Travelers's latest conduct. Next, Plaintiffs argue Travelers's "claims practices and procedures" instruct their adjusters to pay less for claims than what the insurance policy demands. [*Id.*] But Plaintiffs admit they do not have these documents, so this is pure speculation, insufficient under Rule 8(a), let alone the heightened pleading standard of Rule 9(b). *Cochran*, 828 F.3d 597, at 599. Plaintiffs also argue their fraud allegations show that Travelers made misrepresentations at the time the Policy was executed, but they do not plead any specific facts in support. Instead, the sole basis for this assertion is Travelers's post-claims conduct.

## IV. Conclusion

For these reasons, Plaintiffs' common-law fraud and ICFA claims are dismissed, and the dismissal is with prejudice because "amendment would be futile." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015). Plaintiffs' allegations fit squarely within Section 155 preemption, and Plaintiffs concede they do not have any documents to substantiate their theory that Travelers instructs its adjusters to pay less than what is contractually owed.[6] Plaintiffs may proceed on their breach of contract and Section 155 claims.

Plaintiffs' motion to compel remains outstanding. As the Court indicated earlier, [Dkt. 26], it reads the motion to be aimed at substantiating the now dismissed fraud claims. The Court asks the parties to meet and confer to see what (if any)

---

[6] Nor is the Court prepared to permit Plaintiffs to use the discovery process for this purpose. *James v. Hyatt Regency Chi.*, 707 F. 3d 775, 784 (7th Cir. 2013) (parties are not entitled to "fishing expedition[s] in hopes of finding a new way to reshape the facts.")

9

disputes remain in light of this ruling. For the avoidance of doubt, the Court does not intend to permit discovery on any issues that are not directly relevant to Travelers's handling of Plaintiffs' two claims, such as aggregated claims data, other nationwide statistics, training materials, retention policies, pre-Policy communications, etc. To the extent there are outstanding disputes after the meet and confer, the parties are to file a status report outlining the dispute(s) and the parties' respective positions. The Court will resolve any disputes through a status hearing.

Enter: 24 CV 0256
Date: August 2, 2024

_____
Lindsay C. Jenkins
United States District Judge